## HOUSTON *v.* STATE.

[78 South. 182, Division B.]

HOMICIDE. *Self defense. Burden of proof. Reasonable doubt.*

Where in a trial for murder there was nothing in the evidence to connect the defendant with the killing except her own testimony, which showed that she acted in self defense, after being assaulted, with a knife, by deceased, and her testimony was not contradicted by the physical facts or inconsistent circumstances but rather corroborated by the witnesses for the state. In such case the state failed to prove defendant's guilt beyond a reasonable doubt and to a moral certainty and defendant should have been given a peremptory instruction of acquittal.

APPEAL from the circuit court of Bolivar county.
Hon. WM. A. ALCORN, JR., Judge.

Olivia Houston was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*Sillers & Sillers,* for appellant.

*Earl N. Floyd,* Assistant Attorney-General, for the state.

Stevens, J., delivered the opinion of the court.

Appellant was indicted for the murder of one Annie Brandon, was convicted of manslaughter, and sentenced to a term of five years in the state penitentiary, and from this judgment of conviction she prosecutes an appeal.

Two witnesses were introduced by the state, Mr. Linnell, marshal of the town of Rosedale and Dr. Austin, a practicing physician and surgeon. Linnell testified that on the night of the killing the deceased, Annie Brandon, came to his house, "gasping for wind," and stated that she was cut. He was not permitted to state what the deceased said on this occasion, but the witness proceeded to the home of the defendant, Olivia Houston, found the defendant and her husand, Eli Houston, at home together, and, as witness went into the house, overheard a conversation between the husband and wife in substance as follows: The husband said to his wife: "Now you have done it; now you have got to go to jail." The witness, in giving the response of the wife, gave the following testimony: "She says, 'I hope I cut her bad enough' so she would have to go to jail for something." Appellant was then arrested by the marshal. This witness was asked as to the condition of deceased's clothing, and, in response, stated it looked as if it was torn, and, at another point, stated in substance that she appeared to have been in a fight. What the witness said as to the conversation between the husband and wife was objected to by the accused, and the objection was overruled. Dr. Austin, the other state witness, testified that he was called by some one to his office to attend Annie Brandon; that when he arrived at his office he found that she had been stabbed; that an operation was necessary; that he immediately made preparations to operate, placed the deceased on an operating table, administered an anæsthetic; and

that "during the course of the operation she began to get weaker and weaker, and died on the operating table." He further testified that her death resulted from "hemorrhage from a stab;" that she was suffering from a stab wound of the lung inflicted on the right side of the chest. This was all the testimony for the state. There was a motion to exclude the state's evidence and direct a verdict for the defendant, which motion was by the court overruled.

Appellant then took the stand as a witness in her own behalf, and testified, in substance, that on the evening of the killing she was at her home peeling some potatoes in preparation for supper, when her husband left the house to go up town for some medicine; that Annie Brandon was staying in a house some five or six doors away from the defendant's home, and that when her husband, Eli, got in front of the deceased's house the latter called her husband into the house, and her husband thereupon went into the deceased's home and shut the door; that appellant then left her home and went to the deceased's house, knocked on the door, and called her husband out and requested him to go home; that her husband came out, and appellant got him by the arm and started home with him, and had proceeded about three or four houses away from the deceased's house, when the latter, following, rushed up behind appellant and her husband, assaulted appellant, and stabbed her in the back with a knife; that when Annie Brandon attacked her appellant's husband ran away and left appellant to defend herself. Appellant then says that she struck the deceased once with a very small knife, the same knife which she had in her hand peeling potatoes when she left her own home. Appellant denies that she was mad when she left her own home to go to Annie Brandon's house, and denies any malice or intention to kill and murder, protesting

that what she did was in self-defense.   There is no
evidence of any previous threats or difficulty.

The assignments challenge the ruling of the court in
permitting the witness Linnell to testify to the con-
versation between husband and wife over defendant's
objection; the ruling of the court in refusing to ex-
clude the state's evidence and direct a verdict for the
defendant; the action of the court in granting the
manslaughter instruction for the state; and the re-
fusal of the court to grant the defendant a peremptory
instruction.

Taking the transcript of the evidence by the four
corners, there is nothing to connect the defendant
with the killing except the testimony of the defendant
herself, or the statements made by the defendant in
the hearing of the witness Linnell.   There was no
dying declaration, and no witness for the state under-
took to say who provoked the difficulty, who was the
aggressor, or to give any of the details of the fight.
Appellant testifies that she was attacked, that her
husband left her, and that it was necessary for her to
turn upon her adversary and protect herself.   There
was only one wound or stab, and this proved to be
fatal.   Conceding for argument the admissibility of
Linnell's testimony as to what was said between the
accused and her husband, there is nothing to indicate
that the defendant at the time knew the wound was
a mortal wound, and what she said did not directly
contradict the positive testimony given by the defend-
ant in her own behalf.   It appears that the deceased,
after the difficulty, went to the home of the marshal,
and then went to Dr. Austin's office for attention.   The
testimony of Linnell that Annie Brandon looked like
she had been in a fight would tend more to corroborate
than to contradict the testimony of the accused to
the effect that there was indeed a fight, and that the
accused was compelled to act in self-defense.   We are
led to the conclusion, therefore, that the state failed

to meet the burden of proof, and that the record does not show beyond reasonable doubt and to a moral certainty that appellant is guilty. We are fully conscious of the rule as stated in *Wingo* v. *State,* 91 Miss. 865, 45 So. 862, that "the jury is under no compulsion to implicitly believe all the statements of a party acknowledging the killing of the deceased person;" nevertheless, there must be physical facts or circumstances inconsistent with the statements or testimony of the accused. The Wingo Case announces the true rule, but the court there was of the opinion that the statements of the accused were "inconsistent with the physical facts and the testimony of her son as a witness." If all the testimony in the case, whether introduced by the state or by the defendant, leaves the question of the defendant's guilt in reasonable doubt, a judgment of conviction cannot be upheld. This, as we see it, is the case that now confronts us. The account which the defendant gives is not upon its face an unreasonable story. She is the only eye-witness testifying. Her testimony, unless materially contradicted by the physical facts, should not be utterly ignored.

It is earnestly contended that what was said by the husband and the wife, one to the other, should have been excluded. Our view of the facts renders it unnecessary to pass on that question. The defendant nowhere denied the fight or the fact that she used a knife. After all, it is a question of whether she acted in necessary self-defense. From our interpretation of the testimony it follows that appellant was entitled to the peremptory instruction asked for and refused by the court, and that the judgment appealed from should be reversed, and the cause remanded.

*Reversed and remanded.*