478 So.2d 293 (1985)
Betty TIGNER
v.
STATE of Mississippi.
No. 55740.
Supreme Court of Mississippi.
October 2, 1985.
James N. Godwin, Booneville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
*294 ROY NOBLE LEE, Presiding Justice, for the Court:
Betty Tigner was indicted and tried in the Circuit Court of Tishomingo County for murder, Honorable Thomas Gardner, III, presiding. The jury returned a verdict finding her guilty of manslaughter and the lower court sentenced Tigner to twelve (12) years in custody of the Mississippi Department of Corrections. Tigner has appealed to this Court and assigns nine (9) errors in the trial below.
Billy Akers was shot and killed between 8 and 9 p.m. on March 19, 1982, in the trailer home of appellant. The deceased was fifty-two (52) years of age, approximately 5'9" in height and weighed 145 lbs. During the day, appellant, her son Ronald Tigner, and Akers had been together driving around over the county for Akers to attend to some personal business. They drove across the Alabama and Tennessee state lines on different occasions where they purchased and drank beer, and returned to the Tigner home late in the afternoon. Ron Tigner purchased food for them to eat and then left for a friend's house around 7:30 in the evening. Appellant and Akers remained at the trailer alone.
Ron Tigner owned a .22-caliber pistol, which was usually unloaded, but on this occasion, he had put three or four cartridges in the pistol before leaving the trailer, and, according to appellant, she found the pistol and placed it under a loveseat couch in the living room to prevent anyone from being injured by it. Appellant also testified that she did not know the pistol was loaded; that about 8 p.m., she went to Akers' room and saw him lying on the bed in his underclothes; that Akers suggested that she come to bed with him, she refused, and Akers got up from the bed, and went into the room where appellant had gone; that he cursed and slapped her across the face, at the same time threatening to kill her; that Akers started back to his room, turned and staggered toward appellant, threatening her; that she pulled the pistol out from under the loveseat in an effort to scare him, pointed the pistol at Akers and shot him in the right side of the head at a distance of approximately two (2) feet; that she put the pistol in a closet, and about 8:45 p.m. started to a neighbor's house for help, when two of Ron's friends pulled up into the driveway; that she told them about the shooting and said, "Billy tried to rape me, and I think I shot him. One of you come in and help me and one of you call an ambulance." The county sheriff was called and arrived at the scene shortly thereafter, where he conducted an investigation of the homicide.

I.-II.

THE LOWER COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AT THE END OF THE STATE'S CASE IN CHIEF. THE LOWER COURT ERRED IN OVERRULING DEFENDANT'S MOTION FOR DIRECTED VERDICT AT THE CLOSE OF ALL THE EVIDENCE.
The first question raised by Assignment I was waived when the appellant took the witness stand and introduced evidence in her own behalf. We address Assignment II which presents the question of whether or not the lower court erred in refusing to grant a directed verdict of not guilty.
Under this assignment, the appellant relies upon the Weathersby rule stated in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), where the Court said:
It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eye witnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by the credible witness or witnesses for the state, or by the physical facts, or by the facts of common knowledge. [Citations omitted].
147 So. at 482.
The Weathersby rule often has been cited, argued and relied upon by persons convicted of crime under circumstances where they and the victims were the only persons *295 present, with no eyewitnesses to the alleged crime. It has been relied upon also where other witnesses are present whose testimony is not in conflict with that of the accused. If there is conflict or contradiction in material particulars between the evidence offered by the accused and the physical facts and inferences supporting the State's theory of the case, the Weathersby rule will not apply. Lewis v. State, 454 So.2d 1306 (Miss. 1984); Sartain v. State, 311 So.2d 343 (Miss. 1975); Null v. State, 311 So.2d 654 (Miss. 1975). Although the Weathersby rule has been presented to this Court numbers of times, rarely do the cases meet the requirements of that rule. Berry v. State, 455 So.2d 774 (Miss. 1984); Hancock v. State, 299 So.2d 188 (Miss. 1974); and Murphy v. State, 232 Miss. 424, 99 So.2d 595 (1958).
The record reflects the following conflicts and contradictory statements in the testimony of the appellant:
(1) Appellant stated to officers who arrived at the scene that Billy Akers had tried to rape her and that she had shot him.
(2) She stated to Frankie Rice and Glenda Lovelace, the first persons she saw after the shooting, that Akers had tried to rape her and that she thought she had shot him.
(3) Miss Rice testified that appellant told her, "He told me that if I didn't go to bed with him, he'd kill me."
(4) Appellant testified that Akers had threatened her, then slapped her, turned and walked away, turned and then walked back toward her wild-eyed; that she pointed the pistol at him but did not hear the gun go off; he fell to the floor and then she saw the blood.
(5) Appellant stated at the hospital emergency room after the shooting that "Billy Akers tried to rape me. He took the gun and it went off."
(6) Appellant testified Akers had been shot from less than two feet.
(7) The evidence showed that the pistol could be cocked and fired (single action) or fired with a very strong pull (double action).
(8) There were no visible signs on the clothes and attire of appellant that she had been engaged in a struggle.
(9) The examining doctor found no signs or marks indicating an attempted rape upon appellant. No cuts or bruises or marks of physical attack were present. There were no signs of a struggle in the room; the furniture and other articles of personal property were in orderly positions.
(10) On cross-examination, appellant testified "I pulled the trigger, but I was so scared, I didn't know I was pulling the trigger." On direct examination, she stated she didn't remember pulling the trigger. She also said she shot the gun out of fear.
We are of the opinion that all the facts and evidence reject application of the Weathersby rule, the lower court correctly overruled the motion for new trial and submitted the guilt issue to the jury. Hammond v. State, 465 So.2d 1031 (Miss. 1985); Warn v. State, 349 So.2d 1055 (Miss. 1977).

III.-IV.

THE LOWER COURT ERRED IN DELETING CIRCUMSTANTIAL EVIDENCE PORTIONS OF INSTRUCTIONS S-2, C-4, C-5 AND C-20.
Appellant complains about Instructions S-2, C-4, C-5 and C-20 in that the instructions did not also require the jury to find appellant guilty to the exclusion of every other reasonable hypothesis than that of guilt, viz, circumstantial evidence instructions. Appellant testified, and admitted, that she shot/killed Akers; that she was trying to scare him; and again, that she did not know she pulled the trigger. Such evidence is direct evidence of the crime. Anderson v. State, 246 Miss. 821, 152 So.2d 702 (1963). Circumstantial evidence instructions should only be given in purely circumstantial evidence cases. Edwards v. State, 413 So.2d 1007 (Miss. 1982); Bullock v. State, 391 So.2d 601 (Miss. 1980); Gilleylen v. State, 255 So.2d 661 (Miss. 1971). One of the main issues in the trial was the intent of the appellant. In Williams *296 v. State, 445 So.2d 798 (Miss. 1984), cert. den. ___ U.S. ___, 105 S.Ct. 803, 83 L.Ed.2d 795 (1985), the Court said:
[W]here the intent element is the only element proven entirely by circumstantial evidence, no charge on circumstantial evidence is necessary. [Citations from other jurisdictions omitted]. The reason for this rule is that where intent is the only element proven by circumstantial evidence, at least some positive or direct evidence was necessarily relied upon to prove the other elements from which the guilty intent was inferred. Thus, proof of intent in those situations is not entirely circumstantial.
445 So.2d at 808.
Therefore, the lower court did not commit reversible error in declining to include the circumstantial evidence parts to those instructions.

V.

THE LOWER COURT ERRED IN REFUSING APPELLANT'S INSTRUCTIONS D-2, D-4 AND D-8.
We have carefully considered the above instructions and are of the opinion that they are repetitive of other instructions given by the court. Where the issues are submitted by instructions, though not in the exact words of the instruction requested, the court is not required to grant such instructions. Wilson v. State, 451 So.2d 718, 723 (Miss. 1984); Irving v. State, 441 So.2d 846 (Miss. 1983); Anderson v. State, 413 So.2d 725 (Miss. 1982).
The same principle of law stated in Instruction D-8 was covered in Instruction S-3, which was not perfectly drawn, and which has been condemned by this Court. Flowers v. State, 473 So.2d 164 (Miss. 1985); Bebley v. State, 456 So.2d 755 (Miss. 1984); Haynes v. State, 451 So.2d 227 (Miss. 1984); Scott v. State, 446 So.2d 580 (Miss. 1984); Lenoir v. State, 445 So.2d 1371 (Miss. 1984); Robinson v. State, 434 So.2d 206 (Miss. 1983). However, the appellant had no objection to S-3, and any fault was not preserved. The following appears from the record:
THE COURT: All right, sir. What says the defendant to S-3?
MR. GODWIN: We have no objection to that, Your Honor.
THE COURT: All right. The instruction will be given... .

VI.

THE LOWER COURT ERRED IN SUSTAINING THE STATE'S OBJECTION TO CERTAIN TESTIMONY GIVEN BY THE APPELLANT.
Appellant was interrogated by Officers after the homicide on the night of March 19, 1982. The statement was not offered in evidence during the State's case in chief. When appellant testified, she was asked by her attorney about the contents of the statement, to which objection was made and sustained. Appellant contends that failure to permit her to go into the statement, which amounted to a self-serving declaration, was error. In Jones v. State, 342 So.2d 735 (Miss. 1977), the Court said:
It is the general rule, almost unanimously followed, that where the State introduces evidence of statements made by the defendant immediately after a crime, defendant is entitled to bring out the whole of his statement. In the absence of the State using the evidence in the record, the defendant cannot introduce any part on his behalf. Collins v. State, 148 Miss. 250, 114 So. 480 (1927); Davis v. State, 230 Miss. 183, 92 So.2d 359 (1957).
342 So.2d at 737.
Further, the appellant did not make a proffer of what she intended to show by the existence of the statement. We are of the opinion that the lower court did not commit error in sustaining the objection. See also Kelly v. State, 463 So.2d 1070 (Miss. 1985); and Baugh v. State, 388 So.2d 141 (Miss. 1980).

*297 VII.-IX.

THE LOWER COURT ERRED IN SUSTAINING THE STATE'S OBJECTION DURING DEFENDANT'S CLOSING ARGUMENT CONCERNING THE FACT THAT THE STATE REFUSED TO INTRODUCE DEFENDANT'S WRITTEN STATEMENT.

THE LOWER COURT ERRED IN OVERRULING DEFENDANT'S OBJECTION TO CERTAIN PORTIONS OF THE PROSECUTION'S CLOSING ARGUMENT.

THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, SINCE THE STATE FAILED TO ESTABLISH HEAT OF PASSION.
We have carefully read the record and considered the three assignments of error stated above, and are of the opinion that there is no merit in them.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.